# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERIC METZGER, an individual, d/b/a DEMER JEWELRY<br><br>Plaintiff,<br>v.<br>TEMPLE OF THE ANCIENT DRAGON, INC., a Michigan corporation; TOM ERIK RASPOTNIK, an individual; and CINDY FLEMING, an individual,<br><br>Defendants. | CASE NO. 16cv1299-WQH-NLS<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss for Lack of Jurisdiction filed by Defendants Temple Of The Ancient Dragon, Inc. ("TOAD"), Tom Erik Raspotnik, and Cindy Raspotnik ("Defendants"). (ECF No. 9).

**I. Background**

On May 31, 2016, Plaintiff Deric Metzger, d/b/a Demer Jewelry ("Plaintiff") initiated this action by filing the Complaint. (ECF No. 1). On July 6, 2016, Plaintiff filed the Amended Complaint. (ECF No. 7).

On August 5, 2016, Defendants filed the Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 9). On August 25, 2016, Plaintiff filed a response in opposition. (ECF No. 10). On September 2, 2016, Defendants filed a reply. (ECF No. 11). On September 6, 2016, Plaintiff filed

a notice regarding exhibits in Plaintiff's opposition (ECF No. 12), and an objection to a declaration submitted in Defendant's reply. (ECF No 13). On November 22, 2016, the Court issued a minute order allowing Plaintiff to file a sur-reply limited to new evidence presented in Defendants' opposition. (ECF No. 14). On December 6, 2016, Plaintiff filed a sur-reply. (ECF No. 15).

**II. Allegations of the Amended Complaint (ECF No. 7)**

Plaintiff alleges six causes of action against Defendants: (1) trademark infringement, pursuant to 15 U.S.C. § 1051 *et seq.*; (2) false designation of origin, pursuant to 15 U.S.C. § 1125(a); (3) statutory unfair competition, pursuant to Cal. Bus. & Prof. Code § 17200; (4) common law unfair competition; (5) trademark dilution, pursuant to 15 U.S.C. § 1125(c); and (6) copyright infringement, pursuant to 17 U.S.C. §§ 106 and 501. (ECF No. 7 at ¶¶ 38-74). Plaintiff alleges the Court "has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a)[,]" and "related claim jurisdiction over the state law tort claims pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367." *Id.* at ¶ 10.

Plaintiff Deric Metzger alleges that he "is a global leader in the design and manufacture of custom designed jewelry[,]" and "has operated his jewelry design business under the fictitious business name DeMer Jewelry since January 2000." *Id.* at ¶¶ 1-2. Plaintiff alleges that he operates his business out of Carlsbad, California. *Id.* at ¶ 13. Plaintiff alleges that he "is the owner of the trademark 'DEMER,' as formally registered with the United States Patent and Trademark Office ('USPTO')." *Id.* at ¶ 3. Plaintiff alleges that he "has for many years continuously marketed, advertised, and offered for sale, and sold, a variety of jewelry and jewelry products bearing the 'DEMER' mark[,]" and that the "mark has played a significant role in the corporation's success." *Id.* at ¶ 23. Plaintiff alleges that he "expends great time, energy and cost designing unique and custom jewelry to offer for sale to the public" and that Plaintiff's products "generally range from several thousand dollars per piece to over ten thousand dollars per piece" as the result of "the quality" of the jewelry "and the goodwill built

up within the industry." *Id.* at ¶¶ 27-28.

Plaintiff alleges that beginning "in 2014, Defendants began directly lifting images of Plaintiff's custom works from his online advertising and offering for sale Plaintiff's products, or unauthorized knockoffs of Plaintiff's products and designs, through the online media accounts of Temple of the Ancient Dragon, Tom Erik Raspotnik, and Cindy Fleming aka Cindy Raspotnik[.]" *Id.* at ¶ 29. Plaintiff alleges "that the images Defendants have used to sell jewelry are exact copies of images Plaintiff has previously posted of his custom designs[,]" and that the 'DEMER' mark and Plaintiff's products have appeared on "the unique social media and advertising pages of each Defendant." *Id.* at ¶ 30. In the Amended Complaint, Plaintiff lists twenty-five designs that Plaintiff alleges he "has filed for copyright registration for" and that "Defendants have infringed within the last twelve months." *Id.* at ¶ 8.

Plaintiff alleges that he "has contacted Defendant Tom Erik Raspotnik multiple times and requested that he ceases and desists from using Plaintiff's images, custom designs, and other marks, but Defendant has ignored Plaintiff's requests and has instead continued to infringe upon Plaintiff's rights." *Id.* at ¶ 32. Plaintiff alleges "that Defendants' continued use of the mark 'DEMER' in marketing and advertising is designed to cause confusion, mistake, or deception amongst consumers and the industry, and lead to increased activity on Defendants' websites based upon Plaintiff's goodwill." *Id.* at ¶ 34.

**III. Contentions of the Parties**

Defendants move to dismiss this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 9). Defendants contend that they operate "a small family run Internet business" not registered or licensed in California, and that no Defendant maintains a physical presence in California or owns any property in California. (ECF No. 9-1 at 2). Defendants contend that TOAD is a Michigan corporation. *Id.* at 3. Defendants contend that they have not directed any mailings or other specific advertising to California, and that Defendants' sales in

1  California account for less than 1% of TOAD's total business. *Id.* at 2-3. Defendants
2  contend that TOAD "has never sold any of the jewelry alleged in Plaintiff's Complaint
3  to be protected by Trademark and/or Copyright in the [S]tate of California." *Id.* at 3.

4  Defendants contend that there are no facts to support the exercise of general
5  jurisdiction or specific personal jurisdiction over the Defendants in this case. *Id.* at 4,
6  8. Defendants contend that "[t]he most that can be said is that a few residents of
7  California have visited Defendants [sic] internet site and purchased items in
8  Michigan[,]" and that "[t]hose shippers came to Defendants; Defendants did not go to
9  them." *Id.* at 5.

10  Defendants contend they have not committed any "intentional acts expressly
11  aimed at California" that would be sufficient for personal jurisdiction. *Id.* at 9.
12  Defendants contend that the exercise of personal jurisdiction would be unreasonable
13  even if the Court finds that defendants have purposefully established minimum contacts
14  with California. Defendants contend that Michigan has a greater interest in adjudicating
15  this dispute than California does, and that Michigan will be the most efficient,
16  convenient, and effective forum for this action.

17  Plaintiff contends that the Court has specific personal jurisdiction over
18  Defendants. Plaintiff contends that Defendants have wilfully aimed their actions at
19  Plaintiff and at the State of California because Defendants continued to "infringe[] upon
20  Plaintiff's works, despite Plaintiff making multiple requests to cease and desist." (ECF
21  No. 10 at 15). Plaintiff states that Plaintiff has "personally contacted [TOAD] and Tom
22  Erik Raspotnik many times notifying him of his infringing actions and requesting that
23  he cease and desist prior to filing this action." (ECF No. 10-1 at 7; Metzger Decl. at ¶
24  21). Plaintiff contends that following these communications, "Defendants were aware
25  of their wrongful actions and the impact that it was having on Plaintiff, but recklessly
26  continued their actions." (ECF No. 10 at 16).

27  Plaintiff further contends that Defendants "likely" created the website
28  "https://demersjewelry.wordpress.com . . . around March 2016[.]" *Id.* at 12. Plaintiff

contends that the blog has Plaintiff's "business name in both the title and tagged to it to ensure that anyone searching for his business will encounter it." *Id.* Plaintiff further contends that the Defendants' website includes "threats to [Plaintiff] and his business, as well as promises to continue to infringe upon [Plaintiff's] works[.]" *Id.* at 11.

Plaintiff contends that exercising personal jurisdiction over each Defendant is reasonable because the evidence regarding Plaintiff's design process is located in California, and Defendants have retained law firms located in California for this action. *Id.* at 18.

**IV. Analysis**

Defendants move to dismiss this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). In the absence of an evidentiary hearing on the issue of personal jurisdiction, "the plaintiff need only make a prima facie showing of the jurisdictional facts." *Id.* (citation omitted). "[T]he court resolves all disputed facts in favor of the plaintiff" when ruling on a motion to dismiss for lack of personal jurisdiction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Further, "uncontroverted allegations in the complaint must be taken as true." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). This case does not present any disputed jurisdictional facts.

A federal court's exercise of personal jurisdiction over a nonresident defendant must be authorized under the long-arm statute of "the state in which the district court sits." *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). The California long-arm statute "is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." *Boschetto*, 539 F.3d at 1015; *see also* Cal. Civ. Proc. Code § 410.10. "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant

forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *CollegeSource*, 653 F.3d at 1073-74 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted)).

A defendant may be subject to either general or specific personal jurisdiction under a due process analysis. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). In this case, Plaintiff does not contend that the Court has general personal jurisdiction over Defendants; instead, Plaintiff only contends that the Court has specific personal jurisdiction over Defendants. *See* ECF No. 10 at 13 ("There are two types of personal jurisdiction . . . At issue on this motion is specific jurisdiction").

A court exercises specific personal jurisdiction "where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). Courts "employ a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). "The plaintiff has the burden of proving the first two prongs . . . [i]f he does so, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* at 1211-12 (citations omitted).

**A. Purposeful Direction**

Under the first prong of this analysis, the phrase "purposeful availment . . . include[s] both purposeful availment and purposeful direction[.]" *Schwarzenegger*, 374 F.3d at 802. A purposeful availment analysis is used in suits sounding in contract,

while a purposeful direction analysis is used in suits sounding in tort. *Id.* When "the underlying action is copyright infringement," the Court of Appeals has considered the action to be a tort and applied a purposeful direction analysis to assess specific personal jurisdiction. *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) ("Here, the underlying action is copyright infringement, which is often characterized as a tort . . . [p]urposeful direction is therefore the proper analytical framework in this case."). The Court finds that this action sounds in tort, and accordingly applies a purposeful direction analysis.

The Court of Appeals "evaluates purposeful direction using the three-part '*Calder*-effects' test, taken from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984) . . . Under this test, the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citation omitted).

**i. Intentional Act**

Under the first requirement, Plaintiff must demonstrate that Defendants had "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. "There is no requirement that the defendant have any physical contacts with the forum." *Brayton*, 606 F.3d at 1128. A federal court's exercise of specific jurisdiction "over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014). In *Brayton*, the plaintiffs brought a copyright infringement action alleging that a portion of the defendant's "website consisted entirely of material copied verbatim from, and without attribution to, [the plaintiff's] own website." 606 F.3d at 1127. The Court of Appeals held that the defendant had committed an intentional act to satisfy the first requirement "when it created and posted a[] . . . section on its website that infringed [the plaintiff's] copyright[.]" *Id.* at 1128.

In this case, Plaintiff alleges that Defendants have done "'something more' than

1  the operation of a passive website." *Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d
2  1007, 1020 (9th Cir. 2002). Plaintiff alleges that in an effort to sell jewelry, Defendants
3  have used images on its website and social media pages that "[a]re exact copies of
4  images Plaintiff has previously posted of his custom designs." (ECF No. 7 at ¶ 30).
5  Plaintiff also alleges that Defendants created a website with his business name in the
6  address that contains negative information regarding Plaintiff's business. (ECF No. 10
7  at 11-12). The Court finds that Plaintiff's allegations are sufficient to satisfy the
8  intentional act requirement under *Calder*.

### ii. Expressly Aimed at the Forum State

The second requirement "encompasses wrongful conduct individually targeting a known forum resident." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). The Court of Appeals "has emphasized that 'something more than mere foreseeability [is required] in order to justify the assertion of personal jurisdiction, and that 'something more' means conduct expressly aimed at the forum[.]" *Brayton*, 606 F.3d at 1129 (citations omitted).

> It is beyond dispute in this circuit that maintenance of a passive website alone cannot satisfy the express aiming prong . . . [i]t is equally clear, however, that 'operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient to confer personal jurisdiction.'

*Id.* (quoting *Rio Props.*, 284 F.3d at 1020). In *Pebble Beach*, the Court of Appeals found that a defendant has done "'something more' than commit a foreign act with foreseeable effects in the forum state" if that defendant engages in "individualized targeting" of the plaintiff. 453 F.3d at 1157 (citation omitted).

In *Brayton*, the Court of Appeals found that the defendant had expressly aimed its conduct at California. 606 F.3d at 1129. The court found that the *Brayton* defendant's use of the plaintiff's language verbatim on its website placed the defendant "in direct competition with" the plaintiff, and that "[p]rospective clients . . . viewing the two firms' websites [we]re likely to be confused as to the material's true author[.]" *Id.* The court found that as a result, "some may erroneously believe [the plaintiff] is the

infringing party, harming its business reputation." *Id.* The court found that this conduct was adequate to demonstrate "individualized targeting" because the defendant allegedly "had every reason to believe prospective clients in Northern California would see the website—indeed, attracting new business was the point." *Id.* at 1130.

In this case, Plaintiff has alleged that the defendants have used "exact copies of images Plaintiff has previously posted of his custom designs" and "[o]ften, the images Defendant uses contains the federally-registered 'DEMER' mark despite Defendants having no connection to Plaintiff or his business." (ECF No. 7 at ¶ 30). Plaintiff alleges "that Defendants' continued use of the mark 'DEMER' in marketing and advertising is designed to cause confusion, mistake, or deception amongst consumers and the industry, and lead to increased activity on Defendants' websites based upon Plaintiff's goodwill." *Id.* at ¶ 34. Plaintiff's allegations are sufficient to demonstrate that Defendants' actions "w[ere] likely to confuse and deceive potential clients as to the source of the" photographs and the jewelry, and that Defendants' allegedly "wrongful conduct placed it in direct competition for . . . clients with [Plaintiff], an established expert in the field with a practice throughout California." *Brayton*, 606 F.3d at 1130.

Plaintiff sufficiently alleges that Defendants "ha[ve] done more than merely maintain a passive website." *Id.* Defendants in this case have allegedly used exact copies of Plaintiff's images on "the unique social media and advertising pages of each Defendant." (ECF No. 7 at ¶ 30). In *Brayton*, the plaintiff's "allegation that [the defendant] copied the website for the purpose of promoting [the plaintiff's] business and attracting new business" was strengthened by the fact that the two parties engaged "in the same speciality and practiced in the same state[.]" 606 F.3d at 1130-31. In this case, Plaintiff and Defendants both engage in the business of designing and selling custom jewelry over the Internet, both parties have sold jewelry in California – and given the allegation that copies of Plaintiff's images are used by Defendants, anyone searching for custom jewelry online "would have been confused when choosing between [the parties'] web sites." *Id.* at 1131; ECF Nos. 7 at ¶ 23, 9-1 at 2. Taking

Plaintiff's allegations as true, Defendants knew their actions "likely would . . . ha[ve] the effect of injuring [the Plaintiff] in California where [the plaintiff] has its principal place of business." *Panavision*, 141 F.3d at 1322. The Court finds that Plaintiff has satisfied the express aiming requirement.

### iii. Foreseeable Harm

"The" foreseeable harm "element requires that [Defendant's] conduct caused harm that it knew was likely to be suffered in the forum." *Brayton*, 606 F.3d at 1131. In this case, it was "foreseeable that [Plaintiff] would be harmed by infringement of its copyright, including harm to its business reputation and goodwill, and decreased business and profits." *Id.* It was foreseeable that Plaintiff would suffer harm when Defendant allegedly created a website containing negative information about Plaintiff's business with Plaintiff's business name in both the address and title of the website. (ECF No. 10 at 11-12). The Court finds that Plaintiff "has satisfied the third and final element of the *Calder*-effects test[,]" and therefore the Plaintiff "has satisfied the [first] 'purposeful direction' prong for specific personal jurisdiction." *Brayton*, 606 F.3d at 1131.

### B. Forum-Related Activities

Courts use "a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). The Court "must determine if the plaintiff [] would not have been injured 'but for' the defendant[']s] . . . conduct directed toward [the plaintiff] . . . in California." *Panavision*, 141 F.3d at 1322.

The Court finds that after taking Plaintiff's "uncontroverted allegations in the complaint . . . as true[,]" the public may now "conclude incorrectly that Defendants' products and services are produced or otherwise associated with Plaintiff or his products or brand to the harm of Plaintiff and consumers." *CollegeSource*, 653 F.3d at 1073; ECF No. 7 at ¶ 47. The Court finds that Plaintiff has demonstrated that his claims against Defendants arise out of forum-related activities – as Plaintiff would not

have suffered this alleged injury but for Defendants' alleged actions.

### C. Reasonableness

"The final requirement for specific jurisdiction . . . is reasonableness[,]" and "[f]or jurisdiction to be reasonable, it must comport with fair play and substantial justice." *Bancroft*, 223 F.3d at 1088 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). The defendant bears the burden to demonstrate unreasonableness, and must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. "The reasonableness determination requires the consideration of several specific factors:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Bancroft*, 223 F.3d at 1088 (citing *Burger King*, 471 U.S. at 476). "None of the factors is dispositive in itself; instead, [courts] must balance all seven." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993).

### i. Purposeful Interjection

Under the first factor, the Court considers the extent of Defendants' purposeful interjection into California. *Bancroft*, 223 F.3d at 1088. In *Panavision*, the plaintiff and defendant communicated regarding an alleged copyright violation before any lawsuit was filed. 141 F.3d at 1319. In the communication, the defendant "stat[ed] he had the right to use" the plaintiff's copyrighted material. *Id.* The Court of Appeals found that this communication, among other factors, lead to the conclusion that the defendant's "degree of interjection was substantial." *Id.* at 1323.

In this case, Defendants allegedly created a website with Plaintiff's business name in the address and title, and allegedly made a post stating that

> [TOAD] stands behind it's [sic] design team and also hold numerous allowed copyrights and is fully prepared and insured to defend the designs it places in the market and while you may question a design or two, we will always defend our designs and designer's products, which we will

remove if they are questionable whatsoever.

(ECF No. 10 at 11). This post from Defendants' website, as well as others submitted by Plaintiff, appear to be directed towards Plaintiff. (ECF No. 10 at 11-12). These communications support a finding that "[t]he purposeful interjection factor weighs strongly in favor of the district court's exercise of personal jurisdiction." *Panavision*, 141 F.3d at 1323.

### ii. Defendants' Burden in Litigating

Under the second factor, "[u]nless such inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Caruth v. Int'l Psych. Ass'n*, 59 F.3d 126, 128-29 (9th Cir. 1995) (citations omitted). In *Panavision*, the Court found that the burden on the defendant "as an individual living in Illinois to litigate in California is significant, but the inconvenience is not so great as to deprive him of due process." 141 F.3d at 1323.

Defendants contend that "there is a substantial burden on Defendants" if the Court requires them to litigate this case in California because "Defendants have no employees, bank accounts or potential witnesses located in California." (ECF No. 9-1 at 12). Further, Defendants submit a declaration by Defendant Cindy Fleming in the reply,[1] stating the hardship of litigating this case in California while Defendant Cindy Fleming is "the primary in home care provider for Mr. Robert Raspotnik." (ECF No. 11 at 11; Fleming Decl. at ¶ 15). Defendant Fleming states that "if I am forced to travel to California to litigate this matter for anything more than a couple of days . . . I am concerned about the negative impact my absence will have on his health and well-being." (ECF No. 11 at 11; Fleming Decl. at ¶ 17). Plaintiff contends that "[w]hile

---

[1] Plaintiff submitted an objection to the declaration of Cindy Fleming, stating that the declaration "submitted in reply contains evidence that was not previously submitted on the moving papers and Plaintiff is not afforded an opportunity to file a sur-reply[.]" (ECF No. 13 at 2). On November 22, 2016, the Court issued a minute order "allow[ing] Plaintiff an opportunity to file a sur-reply limited to the additional evidence presented in Defendants' supplemental declaration of Cindy Fleming, located in ECF No. 11 at 11-12." (ECF No. 14). On December 6, 2016, Plaintiff filed a sur-reply. (ECF No. 15). The Court has considered the declaration of Cindy Fleming (ECF No. 11) and Plaintiff's sur-reply (ECF No. 15) in ruling on Defendants' motion.

1  Plaintiff sympathizes with Defendants' burden on this point, similar issues arise for
2  every party in litigation, and . . . [c]ase law has noted that these types of burdens have
3  been greatly minimized by modern technology, in particular when the parties have
4  already selected and engaged counsel." (ECF No. 15 at 3).

5  "[W]ith the advances in transportation and telecommunications and the
6  increasing interstate practice of law, any burden is substantially less than in days past."
7  *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (quoting *CE Distrib., LLC v. New
8  Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004)). Defendant has put forth evidence
9  stating that it would be a hardship to travel to and litigate this case in California because
10  of her responsibilities as an in home care provider. The Court finds that this factor
11  weighs slightly in favor of Defendants. *See Menken*, 503 F.3d at 1060 (finding that
12  "[a]lthough the inconvenience" of traveling to the forum state "does not appear to be
13  severely burdensome, this factor weighs slightly in favor of [the defendant]").

### iii. Conflict with the Sovereignty of Defendant's State

15  Defendants contend that the exercise of jurisdiction by this Court would conflict
16  with Michigan's sovereignty because Defendants are citizens of Michigan and TOAD
17  is incorporated in Michigan. (ECF No. 9-1 at 12). Plaintiff's Amended Complaint
18  alleges four claims under federal law and two claims under California law. "The federal
19  analysis would be the same in either [Michigan] or California." *Panavision*, 141 F.3d
20  at 1323. The Court finds this factor weighs in Plaintiff's favor.

### iv. Forum State's Interest

22  "California maintains a strong interest in providing an effective means of redress
23  for its residents tortiously injured[.]" *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191,
24  1200 (9th Cir. 1988). Further, "California has a strong interest in discouraging
25  trademark infringement injuries that occur within the state." *AirWair Int'l Ltd. v.
26  Schultz*, 73 F. Supp. 3d 1225, 1240 (N.D. Cal. 2014). Defendants contend that
27  California lacks a strong interest in this matter because "none of the actions complained
28  of actually occurred in California" and the state's "limited interest in providing a means

of redress for its residents . . . does not support the exercise of jurisdiction." (ECF No. 9-1 at 12-13). However, Plaintiff has alleged that the "extensive goodwill in its trademark within the industry and its clientele" is at risk, and that Plaintiff operates his business in California. (ECF No. 7 at ¶¶ 13, 19). The Court finds that California has an interest in having this matter litigated in California, and thus this factor weighs in Plaintiff's favor.

### v. Efficient Judicial Resolution of the Controversy

"This factor concerns the efficiency of the forum, particularly where the witnesses and evidence are likely to be located." *Caruth*, 59 F.3d at 129. Defendants contend that their "potential witnesses are all located in Michigan." (ECF No. 9-1 at 13). Plaintiff contends that "it is California where the bulk of the evidence is located including the CAD CAM files prepared by Plaintiff Metzger during the design process." (ECF No. 10 at 18). The Court of Appeals has noted that this factor "is no longer weighed heavily given the modern advances in communication and transportation." *Panavision*, 141 F.3d at 1323. Given that witnesses and evidence relating to this matter likely are located in both California and Michigan, the Court finds that this factor does not weigh in favor of either party. *See id.* at 1324 (finding the efficient resolution "factor is probably neutral.").

### vi. Convenient & Effective Relief for Plaintiff

The Court of Appeals has stated that "in this circuit, the plaintiff's convenience is not of paramount importance." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1116 (9th Cir. 2002). Plaintiff chose to litigate its case in this forum. The Court finds this factor to be neutral. *See Caruth*, 59 F.3d at 129 (finding that the plaintiff's "convenience does not significantly influence our analysis.").

### vii. Existence of an Alternate Forum

"[W]hether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." *Sinatra*, 854 F.2d at 1201 (citation omitted). Because the Court finds that Defendants have not made a showing that litigating in

California would be unreasonable, the Court does not address this final factor of the reasonable analysis.

### V. Conclusion

After considering the *Burger King* factors, the Court finds that Defendants have "failed to present a compelling case that the district court's exercise of jurisdiction in California would be unreasonable." *Panavision*, 141 F.3d at 1324; *see also Ballard*, 65 F.3d at 1502 (holding that "[w]e can only conclude therefore that an exercise of personal jurisdiction over [the defendant] would be reasonable" because the defendant "has not carried its heavy burden of presenting a 'compelling case' against jurisdiction."). The Court finds that Defendants are subject to specific personal jurisdiction in California with respect to this action.

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss for Lack of Jurisdiction (ECF No. 9) is denied.

DATED: December 15, 2016

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge